David R. Paoli
John A. Kutzman
**PAOLI, LATINO & KUTZMAN, P.C.**
257 W. Front St., Suite A
P.O. Box 8131
Missoula, Montana 59802
Telephone: (406) 542-3330

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN SCHMIDT,<br><br>Plaintiff,<br><br>vs<br><br>BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, a Delaware corporation, AND WESTERN FRUIT EXPESS, Inc., a Delaware corporation,<br><br>Defendant. | Cause No. CV-06-193-m-DWM-JCL<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff alleges:

**Parties and Jurisdictional Allegations**

1. The Plaintiff, John Schmidt, is a citizen of the State of Montana, residing in St. Ignatius, Montana, which is within the geographic area encompassed by the federal District of Montana and specifically within the Missoula Division of this Court.

Summons Issued 2-006
Receipt No #45149 $50.00

2. Defendant, Burlington Northern Santa Fe Railway Company ("BNSF") is a railroad engaged in interstate commerce. It is incorporated in the State of Delaware, has its principal place of business in Ft. Worth, Texas, and therefore is a citizen of the states of Delaware and Texas. It does business in the geographic area encompassed within the federal District of Montana.

3. Defendant Western Fruit Express ("WFE") is a wholly owned subsidiary of BNSF. It is incorporated in the State of Delaware, has its principal place of business in Ft. Worth, Texas, and therefore is a citizen of the states of Delaware and Texas.

4. This Court has subject matter jurisdiction over Mr. Schmidt's claim against BNSF pursuant to 45 U.S.C. § 56. Alternatively, the Court has jurisdiction over Mr. Schmidt's claim against BNSF pursuant to 28 U.S.C. § 1332 because the amount in controversy, exclusive of interest and costs, exceeds $75,000 and complete diversity of citizenship exists between Mr. Schmidt and both defendants.

5. This Court has subject matter jurisdiction over Mr. Schmidt's claim against WFE pursuant to 28 U.S.C. § 1332 because the amount in controversy, exclusive of interest and costs, exceeds $75,000 and complete diversity of citizenship exists between Mr. Schmidt and both defendants. Alternatively, the Court's subject matter jurisdiction over Mr. Schmidt's FELA claim against BNSF also confers subject matter jurisdiction over the claim against WFE pursuant to 28 U.S.C. § 1367.

## Allegations Common to All Counts

6.     At all times relevant, WFE is and has been a wholly owned subsidiary of BNSF and BNSF's corporate predecessors. WFE maintains and repairs railroad cars BNSF uses to ship perishables in interstate commerce.

7.     From approximately 1974 through June, 1999, Mr. Schmidt worked as a carman/welder for BNSF's corporate predecessors and then BNSF at its car shop in Spokane, Washington. The facility in which Mr. Schmidt worked maintained and repaired railroad cars owned by BNSF's corporate predecessors, BNSF, and WFE.

8.     During the period in which Mr. Schmidt suffered the cumulative injuries alleged in this Complaint, he received paychecks first from BNSF's corporate predecessors and then, after the merger that created BNSF, from BNSF. BNSF and its predecessors solicited Mr. Schmidt and others in the same facility to participate in BNSF's payroll and benefit plans. BNSF and its predecessors issued longevity awards to Mr. Schmidt in their own name without asserting that he was an employee of WFE.

9.     BNSF and its corporate predecessors specified, implemented, and controlled the safety practices in the facility in which Mr. Schmidt worked. BNSF sent Mr. Schmidt for training at its mechanical department facilities in Overland Park, Kansas. BNSF and its predecessors trained Mr. Schmidt and other personnel in the facility in which he worked. BNSF and its predecessors issued written certifications to Mr. Schmidt reflecting his completion of various training programs managed by BNSF and its predecessors. BNSF publicly acknowledged the safety performance of WFE employees together with the safety performance of non-WFE employees and effectively asserted the

safety performance of all these employees validated BNSF's safety programs.

10. A sign outside the facility in which Mr. Schmidt worked identified the property as a BNSF facility. Mr. Schmidt and other employees within the facility wore hardhats bearing the logos of BNSF's predecessors and later, BNSF itself.

11. The welding and grinding work to which Mr. Schmidt was assigned required him to spend prolonged periods underneath railroad cars with his neck and arms fully extended. He asked for relief and/or rotation from this work, but his supervisors refused.

12. Beginning in about 1999, Mr. Schmidt reported on-duty injuries to his hands and arms. BNSF, WFE, and the State of Washington processed these as workers' compensation claims rather than FELA claims on the theory the WFE rather than BNSF was Mr. Schmidt's employer. At all times, BNSF personnel managed BNSF's side of the adjustment and settlement of these claims.

13. Mr. Schmidt last worked at the Spokane facility in June of 1999, at which time he was furloughed. By letter dated November 24, 2003, BNSF recalled him to his old position in the Spokane facility. The November 24, 2003 letter was on BNSF letterhead. It was signed by BNSF's senior manager for "Mechanical/TCU General Timekeeping and Analysis." It instructed Mr. Schmidt to "contact Chad Peterson, General Foreman, of the BNSF RR Mechanical Department in Spokane, WA." The letter did not mention WFE in any manner.

14. By letter dated February 19, 2004, BNSF's medical officer informed Mr. Schmidt he was medically disqualified from working for BNSF because of his responses to BNSF's pre-employment medical questionnaire. This letter did not mention WFE in any manner. The BNSF medical officer arranged a pre-employment physical examination for Mr. Schmidt and instructed Mr. Schmidt on when and where to appear for that examination. The written report of this examination indicated that in addition to problems with his hands and arms, Mr. Schmidt was now suffering from problems with his neck. Consequently BNSF rescinded its November 2003 recall offer to Mr. Schmidt.

15. On or about March 22, 2004, Mr. Schmidt – acting pro se -- submitted a workers' compensation claim to the Washington Department of Labor and Industry. This document constituted the first claim by Mr. Schmidt of any on-duty injury to his neck. BNSF denied the claim as untimely. By letter dated May 12, 2004, the Washington Department of Labor and Industry notified BNSF that its denial of this claim was improper because no physician had yet indicated to Mr. Schmidt that his neck injury was work related.

16. Since 2004 Mr. Schmidt has been receiving workers' compensation benefits pursuant to Washington workers' compensation statutes. The bi-weekly workers' compensation checks have identified BNSF as the payor. The only reference to WFE on those checks has been in the memo line.

## FELA Claim Against BNSF

17. Mr. Schmidt re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 16 above as if fully set forth herein.

18. As a railroad operating in interstate commerce BNSF is subject to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, et seq. The FELA governs all claims by railroad employees for on-the-job personal injuries. It is the exclusive remedy for any such injury.

19. Mr. Schmidt's injuries resulted in whole or in part from BNSF's negligence.

20. As a result of BNSF's negligence, Mr. Schmidt suffered physical, psychological, emotional and mental injuries, including injury to his neck and arms, all to his general damage. He has endured and continues to endure pain and suffering as a result of the cumulative injuries he sustained. He has suffered and will continue to suffer lost wages, lost future wages, lost fringe benefits, lost earning capacity, lost future employment advancement and wage and fringe benefit increases, the cost of future medical expenses and general damages in an amount yet to be determined.

### Negligence Claim Against WFE

21. Mr. Schmidt re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 20 above as if fully set forth herein.

22. Because BNSF was Mr. Schmidt's employer, WFE has no workers' compensation immunity. If the Court finds WFE has any legal capacity to act separately and independently from BNSF, WFE is liable under RCW § 51.24.030 and/or Mont. Code Ann. § 39-71-412 and the common law for negligently injuring Mr. Schmidt.

### Alternative Negligence Claim Against BNSF

23.   Mr. Schmidt re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 22 above as if fully set forth herein.

24.   If the Court determines BNSF was not Mr. Schmidt's employer, BNSF is liable under RCW § 51.24.030 and the common law for negligently instructing and controlling safety practices in the Spokane facility and failing to require the persons who managed that facility to take proper precautions to avoid injuring Mr. Schmidt.

### Constructive Fraud Claim Against Both Defendants

25.   Mr. Schmidt re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 24 above as if fully set forth herein.

26.   BNSF and WFE knew BNSF was Mr. Schmidt's employer and that his claim was subject to the FELA rather than Washington workers' compensation law. Realizing that state workers' compensation statutes impose more restrictive limits on employee claims than the FELA, BNSF and WFE conspired to process Mr. Schmidt's claim under state compensation statutes instead of the FELA. Pursuant to that conspiracy, BNSF and WFE cooperated in asserting to the State of Washington and Mr. Schmidt that WFE rather than BNSF was Mr. Schmidt's employer and caused the claims to be processed and adjusted as workers' compensation claims instead of FELA claims.

27.   These false representations by BNSF and WFE misled Mr. Schmidt to his prejudice. They confused him as to the nature of his legal rights to compensation, thereby delaying his pursuit of his rights under the FELA.

28. BNSF and WFE embarked on the foregoing conspiracy with actual malice and/or committed actual fraud, as those terms are defined in Mont. Code Ann. § 27-2-221. The Court should choose and apply Montana substantive law concerning punitive damages because BNSF and WFE knew they were dealing with a Montana resident when they conspired to deprive him of his FELA rights.

WHEREFORE, Mr. Schmidt prays for judgment

1. Awarding him damages for special and general damages for the injury to his neck pursuant to the FELA, subject to any setoff the Court finds appropriate for amounts he has already received pursuant to workers' compensation statutes;

2. Punitive damages for the conspiracy to misrepresent the identity of his employer and thereby delay his pursuit of his FELA rights;

3. His costs and disbursements in prosecuting this action; and

4. Such other and further relief as the Court deems just and proper.

MR. SCHMIDT DEMANDS A TRIAL BY JURY.

DATED this 6th day of December, 2006.

PAOLI, LATINO & KUTZMAN, P.C.
ATTORNEYS FOR PLAINTIFFS

By: *[signature]*
John A. Kutzman
257 West Front Street, Suite A
P.O. Box 8131
Missoula, Montana 59802