IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

JOHN SCHMIDT,

                Plaintiff,

  vs.

BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY;
WESTERN FRUIT EXPRESS, INC.,

                Defendants.

CV 06-193-M-DWM-JCL

FINDINGS &
RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

_____

     This FELA case comes before the Court on a renewed motion for summary judgment by Defendants Burlington Northern and Santa Fe Railway Company ("Burlington Northern") and Western Fruit Express, Inc., ("Western Fruit") following a remand by the Ninth Circuit.  Because there is a genuine issue of material fact as to whether Burlington Northern was Plaintiff John Schmidt's ("Schmidt") employer, the Defendants' motion should be denied.

**I.    Background**

     Schmidt commenced this action against Burlington Northern and its wholly owned subsidiary, Western Fruit, in December 2006, seeking to recover damages

for cumulative on-the-job injuries he alleges he suffered during the course of his employment.  Schmidt worked in various capacities in railroad freight car repair shops in Spokane, Washington from 1975 through 1999, subject to intermittent furloughs.  From the fall of 1991 through his last furlough in June 1999, Schmidt worked as a welder in the Spokane car shop.  Dkt. 105 ¶ 32.  Schmidt was recalled to that position in November 2003, but Burlington Northern's Medical and Environmental Health Department found that he was not medically fit to return to duty because of a neck injury.  Dkt. 105-20; 105-24.  According to Smith, his neck injury was an occupational one, caused by his years of welding work.

    Citing his alleged occupational injury, Schmidt applied for and began receiving workers' compensation benefits in 2004.  Dkt. 46-15.  Some two years later, Schmidt commenced this litigation seeking to recover against Burlington Northern for negligence under the Federal Employer's Liability Act ("FELA"),[1] 45 U.S.C. §§ 51 *et seq*.  Burlington Northern eventually moved for summary judgment on the ground that Schmidt was employed by Western Fruit, and could not establish that he had been employed by the railroad as required to recover

---

[1] Schmidt also asserted an alternative common law claim of negligence against Burlington Northern, alleged constructive fraud claims against both Defendants, and sought to recover against Western Fruit under a common law negligence theory.  Dkt. 1.  None of these alternative claims or theories of recovery remains.

under FELA. This Court agreed, concluding that Schmidt had not presented sufficient evidence to show that he was employed by Burlington Northern.[2]

Schmidt appealed and the Ninth Circuit reversed, holding there was a triable issue of fact as to whether Burlington Northern was Schmidt's employer by virtue of having the right to "control critical aspects of [Schmidt's] daily work, including those aspects that may have caused his injury." *Schmidt v. Burlington Northern and Santa Fe Railway Company*, 605 F.3d 686, 691 (9th Cir. 2010). This case is now back before the Court on remand, and Burlington Northern has filed a renewed motion for summary judgment citing "additional evidence that was not before the appellate court and that dispels any inference of [Burlington Northern's] right to control" Schmidt's daily work. Dkt. 98, 2. Burlington Northern argues it is entitled to judgment as a matter of law because Schmidt cannot show, in light of this additional evidence, that the railroad had the right to control the daily work of Western Fruit's employees, including Schmidt. Alternatively, Burlington Northern maintains that Schmidt should be judicially

---

[2] Because the parties are familiar with the facts on which Burlington Northern premised its motion, the Court will not recount them here. Those facts are set forth in detail in the Court's April 15, 2008, Findings and Recommendation (Dkt. 62) and the Ninth Circuit's subsequent decision on appeal. *Schmidt v. Burlington Northern and Santa Fe Railway Company*, 605 F.3d 686 (9th Cir. 2010).

estopped from seeking damages under FELA because he claimed and received workers compensation benefits as an employee of Western Fruit for the same alleged injuries.[3]

## II.  Legal Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either: (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial. *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to

---

[3] On December 10, 2010, Schmidt sought and received leave of Court to file the original depositions of Gary Jackson, Harris Lester, Dana Headapohl, and Terry Gay. Dkt. 103, 104. As of the date of this Findings and Recommendation, Schmidt has filed three of the four depositions – Jackson's, Lester's and Gay's. Although Schmidt has not yet filed Headapohl's deposition, the Court is satisfied that the record as it now stands is sufficient for purposes of issuing a Findings and Recommendation on Burlington Northern's motion.

interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*.  The party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248-49.  A fact is "material" if it may affect the outcome of the case. *Id*. at 248.

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

**III.   Discussion**

### A. Right to Control

Under FELA, "employees of railroads engaged in interstate commerce [may] sue their employers for negligent injury in the course of employment." *Schmidt*, 605 F.3d at 689 (citing 45 U.S.C. § 51). Whether a company is the employer of a particular worker for purposes of FELA "turns on the degree of control the company exerts over the physical conduct of the worker in the performance of services." *Schmidt*, 605 F.3d at 689 (citing *Kelley v. Southern Pac. Co.*, 419 U.S. 318, 324 (1974)). One theory of control "by which a plaintiff can establish employment for FELA purposes" is the so-called "subservant theory." *Schmidt*, 605 F.3d at 689. This theory "presupposes the existence of two separate entities in a master-servant relationship," and requires that a plaintiff show "his employer was the common-law servant of the defendant railroad such that the railroad controlled or had the right to control the employer's daily operations." *Schmidt*, 605 F.3d at 690. A plaintiff proceeding under this theory "must also show he was 'employed to perform services in the affairs of [the defendant railroad] and ... with respect to the physical conduct in the performance of the services [was] subject to [that railroad's] control or right to control." *Schmidt*, 605 F.3d at 690.

As the Ninth Circuit has instructed, "[f]or Schmidt to succeed under the

subservant theory, he must show [Burlington Northern] controlled or had the right to control his physical conduct on the job." *Schmidt*, 605 F.3d at 690. Burlington Northern's "generalized oversight of Schmidt, without physical control or the right to exercise physical control of his daily work is insufficient." *Schmidt*, 605 F.3d at 690.

In support of its renewed motion for summary judgment, Burlington Northern argues the following items establish without question that it did not have the right to control Schmidt's physical conduct on the job: (1) various contracts between Burlington Northern and its Western Fruit subsidiary; (2) the collective bargaining agreement between Western Fruit and its employees; (3) a job safety analysis prepared by Western Fruit for the task that allegedly caused Schmidt's injuries, and; (4) deposition testimony from a former Western Fruit foreman.

The first category of evidence cited by Burlington Northern encompasses the series of agreements it entered with Western Fruit after acquiring the refrigerator car company in 1970. Dkt. 98, at 3; Dkt. 100. As those agreements reflect, Western Fruit pays its parent company, Burlington Northern, to provide certain management and administrative services, such as accounting, payroll, and legal services. Dkt. 100-1. Burlington Northern has also submitted contracts showing that Western Fruit leases land, buildings, and other facilities from the

railroad, pays for the use of the railroad's telephone or switchboard services, and pays the railroad to move refrigerator cars to repair facilities. Dkt. 100-2 through 100-9. According to Burlington Northern, nothing in these agreements gives it the right to direct or control Western Fruit's daily operations.

The fact that these contracts may say nothing specific about whether Burlington Northern has the right to direct or control the work of Western Fruit's employees does not somehow negate the evidence of record the Ninth Circuit previously found sufficient to raise a triable issue of fact on this point. For example, the Ninth Circuit found it significant that Schmidt had "offered evidence that [Burlington Northern's] policies regulated how he carried out the welding work which may have caused his injuries, and required [him] to participate in its safety and job skills training along with [Burlington Northern] and [Western Fruit] employees." *Schmidt*, 605 F.3d at 690. As the Ninth Circuit also observed, "Schmidt's supervisors wore [Burlington Northern] logos on their work clothing, suggesting they may have been [Burlington Northern's] agents, and indirectly suggesting [Burlington Northern] controlled how Schmidt did his work." *Schmidt*, 605 F.3d at 690-91. This evidence, coupled with the fact that it was Burlington Northern's "own medical officer who determined Schmidt was unable to return to work," and Burlington Northern who issued Schmidt's paychecks, was sufficient

to make the question of whether the railroad "had the right to exercise day-to-day control over the jobs of [Western Fruit's] employees" a factual one for the jury. *Schmidt*, 605 F.3d at 691.

While the contracts to which Burlington Northern now points may provide support for the its argument that the right to exercise such day-to-day control was lacking, they do not put an end to the question.  The contracts have little, if anything, to do with the daily working conditions in the shop.   The Ninth Circuit made it clear on appeal that Schmidt had presented adequate evidence for a rational trier of fact to find that the railroad had the right to exercise control over the jobs of Western Fruit's employees.  Whether Burlington Northern's contracts with its subsidiary  effectively undermine that evidence is for the jury to decide.

In an effort to convince the Court differently, Burlington Northern cites two out-of-jurisdiction cases for the proposition that where a railroad provides certain services to a subsidiary pursuant to a management services agreement, it can be said as a matter of law that the railroad does not have the right to control the work of its subsidiary's employees.  See *Larson v. CSX Transportation, Inc.*, 835 N.E.2d 138 (Ill. App. Ct. 2005); *Doughty v. CSX Transportation, Inc.*, 905 P.2d 106 (Kan. 1995).  In *Doughty*, however, the court considered the significance of such a management services agreement for the limited purpose of determining whether

the parent railroad corporation was an alter ego of its subsidiary. *Doughty*, 905 P.2d at 112. The *Doughty* court did not consider the question of whether it could nevertheless be said based on other facts in the record that the railroad had the right to control the physical, day-to-day conduct of its subsidiary's employees.

While the court in *Larson* did consider whether the defendant railroad had the right to control the physical conduct of its subsidiary's employees, it did so on materially different facts. *Larson*, 835 N.E.2d at 140-41. The *Larson* court concluded that the plaintiff had not presented enough evidence of such day-to-day control to allow the issue to go before a jury. *Larson*, 835 N.E.2d at 144. Unlike *Larson*, however, the Ninth Circuit has already determined that the facts presented by Schmidt thus far in this case are sufficient for purposes of allowing the jury to decide whether Burlington Northern had the right to exercise day-to-day control over the jobs of Western Fruit's employees. That determination is controlling. Burlington Northern's contracts with its subsidiary do not change matters. While those contracts may help Burlington Northern persuade the jury that it did not have the right to control Schmidt's daily work, they do not provide a sufficient basis for declaring so as a matter of law.

The same can be said of Western Fruit's collective bargaining agreement with its employees. The collective bargaining agreement addresses such wide

ranging matters as wage scales, hours of service and minimum rest periods, use of furloughed employees, seniority, and general shop working and safety conditions. Dkt. 101-1.  As with the contracts discussed above, the collective bargaining agreement may be helpful to Burlington Northern, but it does not change the fact that Schmidt has presented contrary evidence that was sufficient in the eyes of the Ninth Circuit to raise a triable issue of fact on the question of whether Burlington Northern had the right to control the physical conduct of Western Fruit's employees.   Burlington Northern also maintains that the collective bargaining agreement shows that Western Fruit employees considered the companies to be separate and distinct.  Dkt. 98, at 11.  As the Ninth Circuit noted, however, there is contrary evidence of record suggesting that other Western Fruit employees with job responsibilities similar to Schmidt's believed they worked for Burlington Northern.  *Schmidt*, 605 F.3d at 691.   Weighing such contradictory evidence is a matter for the jury, not for the Court on summary judgment.

   Burlington Northern also cites a "Center Plate – Repair & Refinishing" job safety analysis prepared by Western Fruit as evidence that the railroad did not have the right to control those aspects of Schmidt's daily work that he claims caused his injury.  Dkt. 101-4.   While this job safety analysis may well be evidence that Western Fruit controlled some aspects of its employees' daily work,

it is but one piece of evidence for the jury to consider. The jury could still find, based on the contradictory evidence cited by the Ninth Circuit, that Burlington Northern nevertheless retained the right to exercise control over the work of Western Fruit's employees.

Finally, Burlington Northern argues that recent deposition testimony from former Western Fruit foreman, Terry Gay, eliminates any question as to whether or not the railroad had the right to control the work performed by Western Fruit's employees. Burlington Northern's argument on this point is cursory at best. Burlington Northern does not elaborate on what it is about Gay's testimony that it believes dispels any inference of a right to control. Presumably, Burlington Northern means to rely on the fact that Gay has stated, for example, that there were no railroad supervisors present in the shop giving orders to Western Fruit employees.

As Schmidt points out in response, however, such statements add little to the record. Notwithstanding the fact that Schmidt conceded he could not prove that a Burlington Northern supervisor was present in the shop when he worked there, the Ninth Circuit held the question of the right to control was one for the jury. Burlington Northern has not shown that Gay's deposition testimony somehow puts to rest the factual question of whether the railroad nevertheless

retained the right to control the work of its subsidiary's employees.  It will be for the jury to answer this question based on all of the evidence of record, including that presented by Burlington Northern in support of its renewed motion for summary judgment.

      B.    **Workers Compensation**

Alternatively, Burlington Northern moves for summary judgment on the ground that Schmidt should be judicially estopped from seeking damages under FELA because he claimed and received workers compensation benefits as an employee of Western Fruit for the same alleged injuries.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001).  In determining whether to invoke the doctrine of judicial estoppel, courts are to consider the following factors: "(1) whether a party adopts a position clearly inconsistent with its earlier position; (2) whether the court accepted the party's earlier position; and (3) whether the party would gain an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Flagship West. LLC v. Exce Realty Partners, L.P.*, 2010 WL 5329874 * 42 (E.D. Cal. Dec. 20, 2010) (citing *New Hampshire v. Maine*, 532

U.S. 742, 750-51 (2001)).

These elements are not satisfied here. As Schmidt maintains in response to Burlington Northern's motion, his current legal position is not clearly inconsistent with his application for workers' compensation benefits. The subservant theory pursuant to which Schmidt is proceeding contemplates that a plaintiff may prevail "by showing his employer was the common-law servant of the defendant railroad such that the railroad controlled or had the right to control the employer's daily operations." *Schmidt*, 605 F.3d at 690. This means that the plaintiff may be employed by a non-railroad entity, which would ordinarily have workers' compensation rather than FELA obligations. If the plaintiff can show that the non-railroad employer was the servant of a railroad, then the plaintiff may proceed against the railroad under FELA. Under this theory, there is no clear inconsistency between collecting workers' compensation benefits from the employer while also trying to recover full legal redress from the railroad. Burlington Northern does not argue otherwise in its reply brief. *See DeShong v. Seabord Coast Line Railroad Company*, 737 F.2d 1520, 1522-23 (11th Cir. 1984); *Stevens v. Trona Railway Company,* 2009 WL 362114 *2 (C.D. Cal. 2009).

Even if Schmidt's current legal position was clearly inconsistent with his application for workers' compensation benefits, allowing him to proceed would

-14-

not provide him with an unfair advantage or impose an unfair detriment on Burlington Northern.[4]  As Schmidt explains, he "has always conceded the Defendants will be entitled to a setoff if he prevails on the merits," thereby alleviating any concerns regarding a double recovery or unfair detriment to Burlington Northern.  Dkt. 106, at 24.  Again, Burlington Northern apparently concedes this point as it does not argue otherwise in its reply brief.

Because the elements of judicial estoppel are not satisfied, Schmidt should be allowed to proceed with his FELA claim against Burlington Northern.

## IV.   Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that Defendants' Motion for Summary Judgment be DENIED.

DATED this 7th day of January, 2011

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

---

[4] Burlington Northern's judicial estoppel argument might also be cast as an election of remedies defense.  The courts, however, have viewed the harsh doctrine of election of remedies with disfavor in the context of statutory schemes for workers compensation benefits.  *See Freemen v. Norfolk and Western Ry. Co.*, 596 F.2d 1205, 1207-08 (4th Cir. 1979).  This has been especially true where any concern about a double recovery is eliminated because any recovery may be reduced by previously received benefits.  *Id.*